UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BELLEVUE MEDICAL, LLC,<br><br>               Plaintiff,<br>    v.<br><br>TOTAL WOUND CARE OF OKLAHOMA, LLC,<br><br>               Defendant. | CASE NO. 2:24-cv-02149-LK<br><br>ORDER GRANTING IN PART BELLEVUE MEDICAL'S PARTIAL MOTION TO DISMISS |

This matter comes before the Court on Plaintiff Bellevue Medical LLC's partial motion to dismiss Defendant Total Wound Care of Oklahoma, LLC's ("TWC") counterclaims. Dkt. No. 15.[1] The Court grants the motion in part—it dismisses TWC's negligence counterclaim but denies Bellevue Medical's request to dismiss it with prejudice and without leave to amend. TWC may amend its counterclaim within 14 days of this Order.

---

[1] The motion also seeks to dismiss Total Wound Care of Texas and Total Wound Care of Kansas's "third-party complaint," but Defendant Total Wound Care of Oklahoma subsequently dismissed the Texas and Kansas entities' claims, mooting this part of the motion to dismiss. Dkt. No. 24. Separately, although styled as a "motion to dismiss" and seeking to dismiss the "counterclaims" (plural), the motion only argues for dismissal of the negligence counterclaim, not the breach of contract counterclaims, making the motion to dismiss a partial one. *See generally* Dkt. No. 15.

ORDER GRANTING IN PART BELLEVUE MEDICAL'S PARTIAL MOTION TO DISMISS - 1

# I. BACKGROUND

**A.   Bellevue Medical's Claims Against Total Wound Care**

Bellevue Medical is a Washington-based medical billing company. Dkt. No. 27 at 2. In early 2022, Bellevue Medical started providing medical billing services for TWC. *Id.* It entered into a Billing Services Agreement with TWC, under which Bellevue Medical would submit claims to third-party payors and collect payments on TWC's behalf. *Id.* In return, TWC would pay a monthly minimum of $999 or 4.99% of the monthly collections, whichever was higher. *Id.* The agreement had a term of a one year and would automatically renew unless expressly terminated in advance in writing. *Id.* According to Bellevue Medical, its services helped TWC grow its collections from $0 in February 2022 to nearly $1 million monthly by December 2023. *Id.* at 3.

In July 2022, the parties renegotiated the terms of their agreement. *Id.* They entered into a new Billing Services Agreement (the "Operative Service Agreement"), under which TWC would pay either a monthly minimum of $2,999 or 2.99% of monthly collections, whichever was higher. *Id.* This agreement had a three-year term. *Id.*

In January 2024, TWC allegedly blocked Bellevue Medical's access to its systems, preventing Bellevue Medical from performing its obligations under the Operative Service Agreement, which was not set to expire until July 2025. *Id.* at 3–4. Bellevue Medical followed up several times to understand why its access was terminated, to no avail. *Id.* at 3. Bellevue Medical believes that TWC has since contracted with another billing services provider. *Id.*

Based on these allegations, Bellevue Medical asserts that TWC breached the contract and the implied covenant of good faith and fair dealing. *Id.* at 4–8. It seeks $550,734.00 in damages as well as interest, costs, and reasonable attorney's fees. *Id.* at 9.

**B.   Bellevue Medical's Allegations Against Doe Defendants**

In addition to naming TWC as a defendant, the original complaint also named Does 1

through 20, who "are responsible in some manner for the acts, omissions, incidents, transactions, and/or events alleged." Dkt. No. 1 at 2. Bellevue Medical asserted that it would "amend this complaint to state the true names and capacities of said Defendants when they are ascertained." *Id.*

The Court subsequently ordered Bellevue Medical to show cause why the case should not be dismissed for lack of subject matter jurisdiction based on the rule that "in an original federal action (as opposed to a removal action) based on diversity jurisdiction under 28 U.S.C. § 1332(a), a plaintiff's inclusion of fictitious 'Doe' defendants destroys diversity jurisdiction and renders the action subject to dismissal." Dkt. No. 26 at 1 (citation removed). Bellevue Medical then amended its complaint to remove all references to the Doe Defendants, and the Court discharged its order to show cause. Dkt. Nos. 27, 29.

C.     **Total Wound Care's Counterclaims and "Third-Party Complaint"**

In February 2025, TWC Oklahoma answered the complaint and filed counterclaims alleging breach of contract and negligence. Dkt. No. 10 at 13–14. It also added two new Total Wound Care entities as "third party plaintiffs"—TWC Kansas and TWC Texas—and purported to file a "third-party complaint" against Bellevue Medical on their behalf. *Id.* at 8. The Court subsequently ordered TWC Oklahoma to show cause why TWC Texas's and TWC Kansas's claims should not be stricken or dismissed, because those entities were not properly joined and were not proper third-party plaintiffs. Dkt. No. 23. In response, TWC Oklahoma voluntarily dismissed TWC Texas and Kansas from this action, Dkt. No. 24, leaving TWC Oklahoma as the sole defendant in this action and its counterclaims as the only claims against Bellevue Medical.

In those counterclaims, TWC Oklahoma (which the Court will resume referring to as just "TWC") alleges that Bellevue Medical breached the Operative Service Agreement because it submitted several claims incorrectly, which led to denials, and then failed to resubmit those claims. Dkt. No. 10 at 10. According to TWC, this violated Section 5 of the Agreement, which provided

that the parties "will comply with all applicable laws and regulations, including but not limited to, laws and regulations (and government interpretations thereof) relating to billing, coding, and submission of claims to the Medicare and Medicaid programs." *Id.* In addition, Bellevue Medical would invoice TWC for claims that had been denied and then refuse to provide detailed invoice breakdowns. *Id.* at 10–11. TWC alleges that Bellevue Medical's improper billing practices led it to suffer financial losses.

TWC also alleges that Bellevue Medical breached a separate Credentialing Agreement entered into in September 2021, under which Bellevue Medical agreed to license and credential TWC's providers to meet state and payor standards. *Id.* at 11. Bellevue Medical allegedly failed to do so accurately or on time, which led to unbilled work and claims being denied or processed as out-of-network. *Id.*

On August 15, 2023, TWC submitted a written notice to Bellevue Medical terminating the Operative Billing Agreement. *Id.* at 11. Bellevue Medical acknowledged the termination notice two days later, on August 17. *Id.* Just over a month later, on September 25, Bellevue Medical's Chief Experience Officer stated that it had not, in fact, received a termination notice and demanded a $607,016 termination fee. *Id.* at 12. TWC maintains that it does not owe a termination fee based on Section 6 of the Agreement, which provides that no fee is due with proper notice. *Id.*

After terminating the agreement with Bellevue Medical, TWC hired Intelligent Health Techs for billing. *Id.* But Bellevue Medical would not release TWC's medical records and data from its electronic medical record system unless TWC paid it $28,000. *Id.* TWC alleges that even after it paid, Bellevue Medical continued to withhold the records, jeopardizing its compliance with potential Medicare audits. *Id.* TWC alleges that Bellevue Medical's refusal to release the medical records violated Section 10 of the Operative Services Agreement, which requires that Bellevue Medical make records available to the federal government. *Id.*

Based on these allegations, TWC seeks damages of at least $6,740,176 for Bellevue Medical's breach of contract and negligence. *Id.* at 13–14.

## II.     DISCUSSION

### A.     Jurisdiction

The Court has jurisdiction over this action under 28 U.S.C. § 1332 because Bellevue Medical and TWC are diverse from each other and the amount in controversy exceeds $75,000. Bellevue Medical is a limited liability company with two members, both of whom are natural persons and citizens of Washington. Dkt. No. 27 at 2. TWC is a limited liability company with four members, all natural persons and citizens of Oklahoma. *Id.*; Dkt. No. 8 at 1. Therefore, Bellevue Medical is a citizen of Washington and TWC is a citizen of Oklahoma. Bellevue Medical is seeking damages in excess of $550,000, which satisfies the jurisdictional amount-in-controversy threshold. Dkt. No. 27 at 5.

### B.     TWC's Negligence Counterclaim is Dismissed with Leave to Amend

#### 1.     Legal Standard

When deciding a motion under Federal Rule of Civil Procedure 12(b)(6), a court must assume the truth of the pleading's factual allegations and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). The court "need not accept as true conclusory allegations that are contradicted by documents referred to in the [pleading]." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Instead, the plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "detailed factual allegations" are not required, a complaint must include "more

than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* A pleading "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

        2.   <u>The Negligence Claim Does Not Allege an Independent Duty</u>

Bellevue Medical seeks to dismiss TWC's negligence counterclaim as duplicative of its breach of contract counterclaims. Specifically, it argues that the duplicative negligence claim is "improper under the Washington independent duty doctrine, which prohibits the maintenance of a negligence or other tort claim where there is no tort duty arising independently of the parties' contract." Dkt. No. 15 at 2. According to Bellevue Medical, TWC relies "entirely for [its] negligence claim on the existence and terms of the billing and credentialing agreements described in [its] Counterclaims" and "cannot show the existence of any tort duty binding upon [Bellevue Medical] that arises independently of those agreements." *Id.* TWC responds that the independent duty doctrine requires courts to first define the scope of the contractual duties before dismissing tort claims as duplicative, and the scope of Bellevue Medical's contractual duties under the Operative Service Agreement is a factual question, meaning that dismissal at this stage is premature. Dkt. No. 17 at 3–4.

Under Washington law, "[t]he independent duty doctrine is an analytical framework that is used to determine whether one party to a contract can bring tort claims against another party to the contract." *Donatelli v. D.R. Strong Consulting Eng'rs, Inc.*, 312 P.3d 620, 627 (Wash. 2013). The doctrine "will allow a plaintiff to pursue tort claims against a defendant when the plaintiff can prove defendant's 'breach of a tort duty arising independently of the terms of the contract.'" *Id.* (quoting *Eastwood v. Horse Harbor Found., Inc.*, 241 P.3d 1256, 1262 (Wash. 2010)).

TWC correctly cites *Donatelli* for the proposition that the independent duty doctrine requires courts to first determine the scope of contractual duties before deciding whether a tort

ORDER GRANTING IN PART BELLEVUE MEDICAL'S PARTIAL MOTION TO DISMISS - 6

claim is duplicative. Dkt. No. 17 at 4. The Washington Supreme Court in *Donatelli* emphasized that a tort duty must arise independently of the contract, and that this analysis depends on understanding the contract's terms. 312 P.3d at 624. It follows that if factual disputes exist about the contract's scope, then it could be premature to dismiss a tort claim under the independent duty doctrine. But *Donatelli*'s instruction to interpret the operative contract's scope prior to dismissing a tort claim on independent duty doctrine grounds presupposes that there are other, non-contractual duties that might apply.

*Donatelli* itself involved a professional services contract with an engineering firm, and the court recognized that engineers owe a professional duty of care independent of contractual obligations, 312 P.3d at 624–25, similar to the professional duties owed by medical or legal professionals. This professional duty allowed the negligence claim to survive pending clarification of the contract's scope. *Id.* at 625. By contrast, TWC's counterclaim does not allege that Bellevue Medical, as a medical billing services provider, owed a recognized professional duty under Washington law. *See generally* Dkt. No. 10 at 8–16. Nor does it invoke a separate statutory or common law duty. *See id.* Instead, the negligence claim is a near verbatim copy of the contract claims. It restates the contractual duty (while deleting any express reference to the contracts) without identifying any other source of duty besides the contracts.

| **Breach of Contract Claims** <br> **(Dkt. No. 10 at 13)** | **Negligence Claim** <br> **(Dkt. No. 10 at 14)** |
|---|---|
| ¶ 26: Bellevue Medical "materially breached the Agreement" by "submitting a significant number of claims erroneously that resulted in them being denied[.]" | ¶ 34(a): Bellevue Medical breached its duty by "submitting a significant number of claims erroneously that resulted in them being denied[.]" |
| ¶ 26: Bellevue Medical "materially breached the Agreement" by "failing to resubmit those denied claims[.]" | ¶ 34(b): Bellevue Medical breached its duty by "failing to resubmit those denied claims[.]" |
| ¶ 26: Bellevue Medical "materially breached the Agreement" by "failing to provide | ¶ 34(c): Bellevue Medical breached its duty by "failing to provide breakdowns of its |

| | |
|---|---|
| breakdowns of its erroneous invoices[.]" | erroneous invoices[.]" |
| ¶ 26: Bellevue Medical "materially breached the Agreement" by "invoicing TWO for claims that were denied." | ¶ 34(d): Bellevue Medical breached its duty by "invoicing Total Wound Care for claims that were denied[.]" |
| ¶ 30: Bellevue Medical "materially breached the Credentialing Agreement when . . . it failed to properly submit provider credentialing in a timely and accurate manner[.]" | ¶ 34(e): Bellevue Medical breached its duty by "failing to properly submit provider credentialing in a timely and accurate manner." |

Because the negligence claim merely restates the contractual obligations, it is barred by the independent duty doctrine. *See Steadman v. Green Tree Servicing, LLC*, No. C14-0854JLR, 2015 WL 2085565, at *12 (W.D. Wash. May 5, 2015) ("Because this duty, by definition, is identical to [defendant's] contractual duties, the independent duty doctrine bars a negligence claim predicated on this duty"). Perhaps it is true that interpreting the two relevant contracts—the Operative Service Agreement and Credentialing Agreement—involves factual questions, but that is beside the point. There are only contractual duties alleged here, meaning that the Court does not need to interpret either contract to determine which duties alleged are contractual and which are independent. Because TWC's negligence claim does not allege that Bellevue Medical owed an independent duty—whether statutory or common law—it is barred by the independent duty doctrine and dismissed.[2]

3. Leave to Amend is Granted

Bellevue Medical asks this Court to dismiss TWC's negligence claim with prejudice and without leave to amend. Dkt. No. 15 at 7. TWC responds that it should be afforded leave to amend in the event the Court dismisses its negligence claim. Dkt. No. 17 at 5.

---

[2] As other courts have noted, in situations where there are only contractual duties alleged, the negligence claim can be dismissed for failure to plead an essential element (the existence of a duty), and so is properly dismissed regardless of whether the independent duty doctrine applies. *Steadman*, 2015 WL 2085565, at *12 n.10 (holding in the alternative that "regardless of whether the independent duty doctrine applies to Mr. Steadman's negligence claim, the court finds that Mr. Steadman's claim fails for an inability to establish a duty of care owed by Green Tree to Mr. Steadman.").

The deadline to amend pleadings in this case was May 29, 2025. Dkt. No. 13 (scheduling order). Bellevue Medical's motion was noted for consideration prior to that deadline, Dkt. No. 15, and TWC's alternative request for leave to amend was submitted within the deadline set by the Court's scheduling order, Dkt. No. 17 at 5. Accordingly, the liberal amendment procedures afforded by Rule 15 govern the request. *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 952 (9th Cir. 2006).

Rule 15(a)(2) directs district courts to "freely give leave when justice so requires." As the language of the rule suggests, the standard for leave to amend is "very liberal." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). This is because "the underlying purpose of Rule 15 [is] to facilitate [a] decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation modified).

A district court should deny leave to amend "only if there is strong evidence of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment[.]" *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quotation modified). Evaluation of these factors "should be performed with all inferences in favor of granting the motion [to amend]." *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999). However, the amendment factors are not entitled to equal weight. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam). The Ninth Circuit has repeatedly emphasized that prejudice "carries the greatest weight" and is "the touchstone of the inquiry under [R]ule 15(a)." *Id.* (internal quotation marks omitted); *see also, e.g., Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020). Indeed, there is a presumption in favor of amendment absent prejudice or a "strong showing" under

the remaining four factors. *Eminence Cap*., 316 F.3d at 1052. The party opposing amendment bears the burden of showing that amendment is not warranted. *Hedglin v. Swift Transp. Co. of Ariz.*, No. C16-5127-BHS, 2016 WL 8738685, at *1 (W.D. Wash. Nov. 15, 2016).

Granting leave to amend is appropriate here. Bellevue Medical does not argue that it will be prejudiced by allowing TWC to amend its counterclaims, focusing only on futility. *See* Dkt. No. 15 at 7. The Court disagrees that an amendment would be futile. Moreover, there has been no undue delay or bad faith, and this would be TWC's first amendment. Thus, the Court grants TWC leave to amend its negligence counterclaim, including by restyling its negligence claim as one for negligent misrepresentation, if it so chooses. Dkt. No. 17 at 5–6.[3]

### III.  CONCLUSION

For the reasons explained above, the Court GRANTS IN PART Bellevue Medical's partial motion to dismiss, Dkt. No. 15, and dismisses TWC's negligence counterclaim without prejudice and with leave to amend. Any amended counterclaims must be filed by August 5, 2025, and should reflect the dismissal of Total Wound Care of Texas and Total Would Care of Kansas from this action. Dkt. No. 25. TWC must also attach a redlined version in compliance with Local Civil Rule 15(a).

Dated this 22nd day of July, 2025.

_____
Lauren King
United States District Judge

---

[3] Bellevue Medical argues that any negligent misrepresentation claim would be barred by the integration clause in the Operative Services Agreement. Dkt. No. 18 at 2, 6. However, "courts generally defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed." *Clarke v. Upton*, 703 F. Supp. 2d 1037, 1043 (E.D. Cal. 2010); *see, e.g.*, *Puget Soundkeeper All. v. APM Terminals Tacoma LLC*, 545 F. Supp. 3d 893, 897–98 (W.D. Wash. 2021) (declining to find that amendment was futile and concluding that the issue was "better suited for a fully-briefed dispositive motion").